We'll turn to United States of America v. Edouard Arqueta-Rodriguez. Good afternoon, may I please the court. I'm John Chambliss, Federal Defender in Europe for Appellant Edouard Arqueta-Rodriguez. Two independent reasons warrant a vacater of Mr. Arqueta's plea. The first is the court's error in informing him that he faced a statutory maximum of 20 years of crime conviction rather than only two years. Isn't this effectively an opportunity to get him resentenced? Isn't that essentially what you want? No, Your Honor, counsel below made a quick motion to withdraw the plea, literally to take back the plea. But I thought the idea was that his sentence was excessive under these circumstances. No, no, not at all. You don't think it was? Well, you know, it was within the range of 15 months. It's not excessive in that sense. Counsel's complaint was that the plea, and she admitted that was her error. She advised her client to enter this plea. And then four months later, she said, you know, I want to withdraw it on his behalf. And I talked to him because I misinformed him that this was an aggravated felony, when in fact, after upon further research, that it was not. And so that in all fairness, instead of just arguing this as a legal issue, counsel said, you know, I just want to take back the plea and have the parties restored to their original pre-plea position. And the idea is that it would make a difference, presumably, for a defendant to know that he is facing a maximum of two years rather than 20. Absolutely. It's a very different plea calculation. I mean, not just whether it's a plea or not, but also what kind of plea to enter into. He got a sentence of, what, 15 months? 15 months. You think you're going to do better on remand? Well, Your Honor. Presumably that's what you want. That is, you hope to achieve something here. Sure. All sorts of things could happen. You know, you could enter into a misdemeanor plea. You could go to trial. All sorts of things happen in trial. Yeah, he could go to trial, and then he'd be faced with a, he would lose his acceptance of responsibility. Yes, Your Honor. He would get a higher sentence. I understand. There's all sorts of possibilities. I mean, essentially, what it looks like to me is that you want to attack his sentence by withdrawing the plea. But you're faced with a problem of the fact that you had an appeal waiver here, and this is a way around it. Well, you know, that's one way to characterize it, but all I'm saying to Your Honor is that, you know, on its face, counsel moved to withdraw the plea. And there's no reason to sort of not take her word for it. She wanted to literally withdraw from the plea and go back to the pre-plea. All right. But are we not, are we, in other words, are you saying that the appeal waiver doesn't apply in this case? Oh, absolutely not. This case is controlled by this court's decision in Hernandez from 2001. So if it's controlled, how do you uncontrol it? I'm sorry, it's controlled. That case said that the plea waiver is not applicable when the argument on appeal challenges the process by which the plea was entered. And so here, it's exactly the same situation as here. But the only difference is that there, after the defendant entered his guilty plea, he got rid of old counsel and hired new counsel and said that he wanted his plea back. Let me ask you about that for a moment, just to try to get an understanding of the situation. Who was the original counsel? It's always been this office. Not me, but somebody from my office. So this happens every so often, we encounter this situation. It's one of your colleagues who is falling on her sword. Is that right? That's right. And doing what? Telling us that she failed her client in some way? Yes, she misadvised him about what he faced. I mean, I know this is a matter for your office to decide, and it's none of our business directly, but it's kind of odd that the original counsel, who's in your office, and who would have been helpful to us in giving us the full context, has relied on you to come up here and take the heat, as it were. Oh, well, this is certainly – this is just our practice. Your practice is if you get into trouble, you get somebody else to – No, no, no, absolutely not. Our practice is it's routine. We always do this, that there's a separate counsel for appeal. There's a specialized appellate counsel. We do the appeals. It's not just in this case, Your Honor. All right, let me ask you a slightly different question. Have you consulted with your client as to what the consequences of your victory here would be? I don't want to – That's either yes or no, I think. Well, there's attorney-client issues. The way I would answer that – No, no, no, nobody's asking what was said. It's just a question of whether there was a consultation, because one of the very important questions is whether or not he's going to be served if the plea is withdrawn. I understand, Your Honor. I guess the way I would answer this is that Mr. Arcada was there and wanted his plea back in the trial court, and after the decision was denied and he was sentenced, he wanted to appeal. Let me put it to you. And so I would say that he does understand exactly what the consequences are. All right. Let me narrow that a little bit. Does he understand that if he achieves a great victory here in the United States Court of Appeals for the Second Circuit and goes back to the Eastern District of New York, he may have to go on trial? And if he goes on trial, he runs certain risks, for example, of conviction on these charges, and that that might expose him to greater penalties than those to which he is now exposed. Does he understand that? I have no reason to believe that he does not, Your Honor. He was there when this appeal was simply the continuation of a process that was started in the district court. Of course, by definition, it's an extension of a process that began in the district court. But the calculations are exactly the same, is what I'm saying. Mr. Lee, you're a very experienced and very reputable counsel. You appear here often. We're always delighted to see you. But I have a simple question. Does he understand that the effect of prevailing here might expose him to a much higher sentence than that which was actually imposed? All I can say, Your Honor, is that based on everything I know, he is fully aware of the consequences. But I don't – I can't – Well, let me just say something about the consequences, because this isn't just the loss of acceptance of responsibility. It's also that he could be prosecuted under the SORNA charge. I understand that, yes. And when you're in the SORNA area, the sentences can be vast, right? You know, we could go – it's not – you could do a little bit of the crunching. It's maybe – A little bit of crunching? No, no, in terms of, like, if he pled again, we'd have to – there's a bunch of hypothetical steps. We'd have to take. Well, what would he be pleading guilty to? The government says we don't want to take a plea anymore. We're tired of that. You had your chance. You withdrew it. Let's go to trial. We need more trials for our assistant U.S. attorneys. That's apparently the case. I was just saying that this is – you're putting me in a difficult position because I can't – you know, I can't – I don't know what's going to happen when – if he gets his plea back. Maybe the government will offer him his demeanor plea. Maybe he goes to trial and beats the charges. Maybe he just decides, you know what, let's just go through the same thing again. Well, let me suggest this. You're not – you actually don't – I'm not quite sure I've understood your response to this line of questions. It appears that you're saying that you're not quite sure that he understands the risks that he is – No, no, no. What I'm saying is that there's absolutely no reason for me to think that he does not understand the consequences because the consequences now are exactly the same as they were when he moved to withdraw the plea. And so there's no reason why he wouldn't understand. And he may think that he's going to prevail on this aggravated felony argument as a matter of law and that he's still subject to the two years, so the risk to him is nine months as opposed to 18 years or more. Could I bring you back to Hernandez for a second on this appeal waiver issue? Was it not the case that in Hernandez that was really about an appeal regarding the defendant's sentence? And here we are faced with the stipulation in which Mr. Rodriguez agreed that he would not appeal the conviction or sentence? No, no, no. It's exactly the same thing. It was an appeal of – it was the defendant after he pled guilty pursuant to a plea agreement with a waiver then tried to withdraw his plea saying that, you know, counsel misadvised him or something, and then raised the same claims on appeal. And then this Court raised two grounds to reject the government's attempt to enforce the appellate waiver. One was that this issue about sentence versus conviction. It was about that the government had a different – used different language in the plea room back then. They just said sentence, and now it's a sentence or conviction. But alternatively, the Court also said even apart from that language, we will not enforce the waiver because we won't enforce the waiver when the defendant is challenging on appeal the very process by which he entered the plea and plea waiver, right? It doesn't – it's not a fair thing to do as a commonsensical matter. And the only difference between this case and Hernandez is that Hernandez got new counsel in the district court when he tried to withdraw his plea. And so, you know, maybe ideally if we sort of turn back the clock here, maybe ideally what should have happened in the district court was for Mr. Arcada to get new counsel in moving because it was counsel's alleged ineffectiveness in entering the plea. But it didn't happen, and this kind of thing sometimes happens, and everybody sort of just, you know, overlooks it. So do we have to find – do we have to find that your colleague was in some sense ineffective? I don't think so because the issue was presented in any event. You know, it was – so, I mean, this could have been raised as a 2255, right, ineffectiveness in advising the plea, but it seems unnecessary at this point to do so. The record is absolutely clear. The district judge knew exactly what the issue was she was presented with. So there's no reason to sort of turn back the clock on that. Now, Hernandez, of course, is a very common Spanish name. It's like saying in the tax law area the Calvary case, of which there are thousands. So the United States against Hernandez does not appear in your list of cases. You didn't cite it. Oh, I did. I'm sorry. I cited it in the footnote just to discuss that in 2000. A footnote. Well, in the footnote in the sense that, well, Your Honor, it's not my obligation to raise an appellate. To raise an appellate waiver issue. The government has discretion not to raise the waiver issue. No, I understand. But it is your obligation to give us a table of cases which reflects the cases on which you are relying. I apologize. Do you, in fact, rely on the United States versus Hernandez? I do. It's in the footnote. You know, Your Honor, it's the same case they cite in the very last minute. No, I'm not asking what they cite or don't cite. I'm asking what you're relying on. What page is that? I'm sorry. Yeah, I'll find it. Somewhere in there. Yeah, I'll tell you where it is. But it's the government's last point on the very last page. They drop a footnote also to Hernandez, and they say, well, Hernandez means that this court can review my second argument. Hernandez is in their table of cases. Yes. Details, details, Mr. Lee. I apologize. Yes, I will do better on that. And, of course, Mr. Lee, if we disagree with you and determine, consistent with the government's brief and argument, that sexual abuse of a minor constitutes an aggravated felony, then it doesn't matter. Yeah, I know. That's it for you. Right, yes, of course. Well, not it's for you. It's for your client. Yes, Your Honor. And, obviously, I would certainly ask the court to reach the substantive issue, and I think that the issue is essentially controlled by the 2014 decision in Van Reed, that it's an aspect of the holding in that case that says that the generic age of consent for statutory rape is 16, and, therefore, that generic sexual abuse of a minor as applied to statutory rape, that the generic age of consent is 16, and, therefore, that the New York law here, which permits for conviction even when the other party, the victim, is 16. Yeah, but broadly speaking. It's too broad. It's broader than the generic statutory rape law, and, therefore, it doesn't qualify sexual abuse of a minor under the. . . I think I was on that panel, and I. . . Yes, you were, Your Honor. I've got a slightly different take on that, but. . . Other than Taylor, DeCamp, Mathis, and categorical analysis. All right, Mr. Lee, I've given you some extra time. It's always a pleasure to do so. Thank you. You reserve two minutes. Thank you. May it please the Court, my name is Chris Gafferon. I'm an assistant United States attorney in the Eastern District of New York. I represent the United States in this matter. Just to address whether this defendant would be in a worse position, he absolutely would be in a worse position. He received significant benefits from this plea bargaining process. One was the dismissal of additional crime that he committed, the failure to register as a sex offender. Two is he wouldn't receive three acceptance. . . All right, but we are where we are. He wants to proceed, so take your best shot. So the, and I did want to address the Hernandez issue. Hernandez, it is cited in our brief in the footnote. Hernandez is distinguishable on the ground that he raises with respect to the aggravated felony issue, because in Hernandez, the plea agreement was very narrowly drafted. It only applied to the sentence, whereas our plea agreement, which can be found in the record at 24 paragraph 4 of the plea agreement, it applied to both convictions and sentencing, which Your Honor had noted. All right, so when it applies to conviction, does that mean that he can't withdraw the plea? He cannot. That that's covered, a plea withdrawal is covered by that? It would be. However, his Rule 11 claim would survive the appellate waiver. Right, I understand that part. Right, but it would cover the motion to withdraw the plea on the grounds that are currently before this Court. But Hernandez did not have a conviction waiver. Correct. Mr. Lee, and I think that's right, but Mr. Lee points out that that's a little perverse, because if there is a significant misunderstanding, mistake, whatever it is, then you have a plea waiver that applies where the person, for example, let's say that he had been told that the maximum was 100 years, and he pleads under that incredible misimpression. Isn't that perverse? It's not, Your Honor, because if the defendant, if there was reason to question the voluntariness of the defendant's plea, then he'd be permitted to overcome the appellate waiver. He'd be able to look outside the appellate waiver. That's what he's trying. So you wouldn't be in that universe because you would have an exception to the appellate waiver here. Those facts don't apply. This defendant actually received less time than the maximum sentence that he argues he could have received, which is two years. As I said before, he received significant benefits from the plea bargaining process, including not only the acceptance of responsibility, not only the dismissal of the charge, but our promise not to seek a more severe sentence, which was all part of the plea bargaining process. And in exchange for that, he agreed not to waive his right to appeal if he received a sentence of 24 months or less. And this Court should enforce that appellate waiver with respect to his claim that this is not an aggravated felony, with respect to his claim that he should have been permitted to withdraw his guilty plea. But even if the Court were not to enforce the appellate waiver, the defendant's claim fails as well because the district court did not err in refusing to allow the defendant to withdraw his guilty plea because he does not provide a fair and just reason for the withdrawal of his guilty plea. He's not asserting a legal innocence claim. This is a sentencing factor under Alamandaris-Torres and subsequent Supreme Court and Second Circuit precedent. This is a sentencing factor, not an element of the offense. So he's not actually asserting an innocence claim. In addition- What about- Well, he doesn't get the aggravation, the aggravated language, because the categorical test doesn't work in the government's favor here. I'm sorry, I don't know if I- So you have a rule, a generic rule that is applied here is for the aggravation that would occur for the abuse of the minor is 16 years, but the New York statute is broader than that, so that the New York statute doesn't satisfy the requirements of the generic because it's broader than the generic, right? And so, therefore, that particular aggravation can't occur. Correct. That would be a sentencing factor, so he would have received a lower statutory maximum sentence, but it's not an element of the offense. Right, right. And so there was a valid forum for him to raise this issue. It was at sentencing, not through a withdrawal of a guilty plea. And he did raise that issue, and the court rejected it because there was binding precedent from this court. And, golly, very rarely you have, as a district court, maybe not very rarely, but in my experience, you don't actually have a Second Circuit case that is directly on point where you have the Second Circuit, this court, saying this exact same statute that this defendant is convicted of is an aggravated felony. And then you have subsequent decisions reaffirming that decision, including a criminal case in Funes Panetta, I think it was 2015, that said Section 3509 is valid. Can't the issue be raised as long as the case is still pending? In other words, it's not finally determined on appeal? We're not talking about retroactivity here. We're talking about the dependency of the case that raises where the law has changed and something occurs and then it's brought to the attention of the court on appeal. But the law hasn't changed on this point. In Funes Panetta, this court said just a few years ago that until the Supreme Court comes and changes the operative definition of what constitutes sexual abuse of a minor for purposes of determining what an aggravated felony is, 3509 is controlling, Mughali is controlling. Obviously, Second Circuit actually said or, and then Bonk decision from this court. So the law has not changed. Funes Panetta, this court already said it's much pretty recently. Can we turn to the questions of whether the withdrawal here was knowing and voluntary? I mean, we're being the same ground, but why don't you focus on voluntariness and knowing? Of the defendant's plea. So during the plea colloquy, there were Rule 11 rights that were not disclosed to the defendant. The government concedes error on that. And which were those? Those rights were his right to a jury trial, his right to be represented by counsel, and certain rights that he had at the trial, for example. To testify. Rights to testify, to compel testimony, to not testify if he so chooses. But there was a statement that he could present evidence. Right. He did say that. But not that you could compel witnesses. But since we're on these questions. When we're looking at the voluntariness, you look at. Well, you know what, you might want to. Hold on one second. I think we are. That's the way it works. So we're talking about the management of each of these offices. I'm just curious, at this hearing before an experienced judge, that these significant parts of Rule 11 were not touched upon. As you know, district judges tend to have what they call scenarios or other things, and everyone has a list of things to go through. And, of course, the assistant U.S. attorneys have their own list, and they appear before the judge. And one of the duties of an assistant U.S. attorney in those situations is to remind the district judge that she has missed items 7, 10, and 15, or whatever, all of which are important. Can you explain what the setting was like in a courtroom? Were you there? Yes, sir. So what happened there that someone as experienced as Judge Sabert would forget to mention these particular. Did somebody forget to bring something on the bench or something? Not that I'm aware of. I was present for it. I also have a decent amount of experience for assistant United States attorneys. I've been doing this for almost eight years. And ordinarily you would mention to a judge, let's go back a bit. You didn't do that, right? No, I didn't. It's my error as much as the court's. I will endeavor in the future to never have this mistake occur again. I normally bring a checklist. I normally check off each box for the Rule 11 rights that the defendant has. And then if the court fails to advise, as Your Honor had said. Checklists are good, especially when the National Rules Committee loves to expand Rule 11 to include ever more additional requirements. These checklists are vital. But you'll take it under advisement? Absolutely, 100%. And I have some ideas that I'll share with the office from my own mistake. It was a mistake on my part for not bringing it to the court's attention. And I don't have any excuse for it. So let's go back to knowing involuntary. So the defendant, his plea was knowing involuntary. This defendant wanted to plead guilty. He was asked on the record whether he was pleading guilty because he was guilty. He had sufficient time to speak to his attorney. They went through the plea agreement. His attorney, Tracy Gaffey, is an extremely experienced defense attorney that I've known for years. And there was no doubt that this defendant was guilty, that he wanted to plead guilty. It's not a very difficult case. It's a straightforward case. He illegally reentered the country after being deported and without getting permission to reenter. Guilty right there. And the aggravated felony issue had to do with sentencing and exposure, but guilty. He was guilty. And there was no valid defense. There wasn't, you know, any discussions of any valid defense. He was found in the Eastern District of New York. He committed another crime. It wasn't as if he was coming across the border and was being forced to cross the border. There was no viable defense. The point on the other side, as I understand it, is that you may make a different assessment for whatever reason, wisely or unwisely, if you think that you are told that you are facing two years by way of a statutory maximum rather than 20, 30, 40, 50 years. I don't think it would have affected his decision making whatsoever. Why do you say that? Because he has no viable defense. He was getting a number of concessions from the government, including the SORNA violation, which would have increased his statutory penalties beyond the two years anyway, would have increased his guidelines, because now you have to do a grouping analysis if you have two crimes that he's going to do. Did he have the plea agreement at the time of the plea? He had a plea agreement at the time of the plea. With the two-year cap? No, with the 20-year cap. The 20-year cap. Correct. Which he, going into the plea, on the record, he had said he reviewed the plea agreement with his attorney. He understood it. He understood the statutory penalties. His attorney also said that originally they believed that it wasn't an aggravated felony. There was some back and forth between myself and Ms. Gaffey, as well as some independent research on their part, and they concluded correctly that it was an aggravated felony. From our perspective, this is not, I'm surprised we're here, because we do, at the district court level, have clear precedent from this court saying the exact same statute was an aggravated felony. There was no ineffectiveness. Ms. Gaffey was correct. It was an aggravated felony, as is the government now saying that it is. So this defendant voluntarily decided this was in his best interest and then received a very favorable sentence of 15 months. In fact, the court had come out and said she was originally thinking of imposing a 21-month sentence and dropped down to 15 months based on some of the arguments that occurred at sentencing. So I don't think you have a situation where there's any question that this disposition was what the defendant wanted, and it was actually in his interest at the end of the day. And so if there are no further questions, the government will rest on its papers. Thank you very much. Thank you. Mr. Lee. Just two quick points. First, Fernandez is at footnote 9, page 17 of my brief, and it was a procuring decision. Chief Judge Walker, then Chief Judge Walker, was on it, and the relevant passage is at 113 to 114. I would additionally point out, if the court were interested in the waiver issue, that the way that the district judge allocated it on the waiver is also problematic, and this is at page 31 of my appendix. In explaining the waiver to the defendant, Judge Feinberg said that as long as I sentence you to 24 months or less, you can't appeal my sentence no matter how I arrive at your offense. All right? I understand. And so, you know, even though the plea agreement sort of says conviction or sentence, the allocution, you know, all we have on the record is that he understands he can't appeal a sentence. And so we've got that problem, too. Let me ask you, Mr. Lee, and I hate to quite put it this way, but if you were to pick your poison, and if the choice were between losing on the merits of whether this constitutes an aggravated felony or losing on the appellate waiver, what would that be? What would you do? Oh, I'm not sure I can answer. I think I shouldn't lose on either, Your Honor. No, I understand that. It would be a bad precedent on both, Your Honor. I really do think that the appellate waiver issue is very much controlled by the decision in Hernandez. And, you know, the court can read the decision. I think it's completely controlled by that case. As for the aggravated felony issue, it's not Mugali that controls, it's Van Mead that controls. Van Mead is the criminal case. That says that age 16 is the generic age of consent for statutory rape laws. The statute, the New York statute there, is identical, essentially, to the one issue here. It just turns out that New York calls rape in the third degree when it's intercourse, and they call it criminal sexual act in the third degree when it's oral and anal conduct. So the statute in Van Mead was the other one, was criminal sexual acts, and the one here is rape, but the age limit is exactly the same. And Mugali does not control, at all. Mugali answered a very different question because of Chevron death rates. And the question before the court in Mugali was simply, was the BIA's interpretation of this term, sexual abuse of a minor, reasonable, permissible, meaning that it's not arbitrary and capricious. It's a low threshold. The question here in a criminal case, interpreting a statute for purposes of a criminal prosecution, is what is the best interpretation of the term sexual abuse of a minor? And we submit that it's Van Mead that controls, not Mugali. Thanks very much, Mr. Lee. We'll reserve the decision.